IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SMITH'S READY MIX, INC.                                           PLAINTIFF

v.                          Case No. 4:18-cv-04014

LIBERTY MUTUAL INSURANCE COMPANY                                  DEFENDANT

ROBERTSON CONTRACTORS, INC.                              INTERVENOR PLAINTIFF

v.

SMITH'S READY MIX, INC.                                  INTERVENOR DEFENDANT

SMITH'S READY MIX, INC.                                       COUNTER-CLAIMANT

v.

ROBERTSON CONTRACTORS, INC.                                  COUNTER-DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Smith's Ready Mix, Inc.'s Partial Motion for Summary Judgment (ECF No. 40, filed April 17, 2020). Plaintiff's motion contains five parts and only discusses the highway bridge project over the Quachita River in Clark County, Arkansas ("Quachita Project"). Part one asks the Court to find that the Concrete supplied by Plaintiff for use in the Quachita Project, on September 8, 2016, satisfied the requirements of the parties' contract. Part two asks the Court to find that the "Special Testing Provision" of the contract did not require or permit destructive core drilling to determine the compressive

1

strength of the concrete supplied under the subcontract. Part three asks the Court to find that, even if the Special Testing provision required or permitted destructive core drilling to determine the compressive strength of the concrete supplied under the subcontract, there is no genuine issue of material fact that the concrete supplied by Plaintiff complied with the strength requirements. Part four asks the Court to find that there is no genuine issue of material fact that the core samples tested on March 28, 2017 were unnecessary, unjustified, irrelevant and tested in violation of A.S.T.M. C42/C42M, § 7.8 and that SRMI is not responsible for the quality of concrete materials A.S.T.M. determined violated their standards and specifications. Finally, part five asks the Court to clarify the remaining issues.

Plaintiff submitted a Statement of Facts (ECF No. 41) and a Brief in Support (ECF No. 42). Defendants Liberty Mutual Insurance Co. and Robertson Contractors, Inc. filed a Response in Opposition (ECF No. 45, filed May 14, 2020). Defendants submitted a Statement of Facts (ECF No. 47) and a Brief in Support (ECF No. 46). On May 29, 2020, Plaintiff filed a Reply (ECF No. 50). This matter is now ready for consideration.

I. **Background**

    A. **Procedural Background**

On October 19, 2017, Plaintiff Smith's Ready Mix, Inc. ("SRMI") filed a complaint against Defendant Liberty Mutual Insurance Company ("Liberty"), the surety of the disputed contract. (ECF No. 3). On January 23, 2018, Liberty filed a notice of removal based on diversity jurisdiction in this Court (ECF No. 1) along with an answer to SRMI's complaint (ECF No. 4). On August 29, 2018, Robertson Contractors, Inc. ("Robertson") filed a Motion to Intervene in the present suit. (ECF No. 10). The Court granted the motion (Order, ECF No. 22), and Robertson filed a complaint against SRMI. (ECF No. 23). SRMI answered the complaint and asserted a counterclaim against Robertson. (ECF No. 26). Robertson then filed an answer to SRMI's counterclaim. (ECF No. 27). On January 28, 2020, SRMI filed an amended answer and counterclaim. (ECF No. 37). Robertson filed a timely reply. (ECF No. 38).

    B. **Factual Background**

Robertson and SRMI entered into two, separate subcontracts by which SRMI agreed to provide materials to be used by Robertson to complete contracts Robertson had with the Arkansas State Highway and Transportation Department ("AHTD").[1]  Liberty is the surety of Robertson for both contracts and provided the bond.  The first contract, the Ouachita Contract, is the subject of this partial motion for summary judgment.  The AHTD selected Robertson as the general contractor.  Robertson then contracted SRMI to provide the concrete for this project.

The contract in question (ECF No. 40 at 7) was prepared by SRMI as a formal offer to Robertson. The contract stated that SRMI would provide: 2100 psi , 4" Slump, 517# Cementitious, 0.58 W/C; 3500 psi, 4" Slump, 611#, Cementitious, 0.49 W/C; 4000 psi, 4" Slump, 611#, Cementitious 0.44 W/C, AE; and drilled shaft.  Beyond stating the costs, the contract also stated that Robertson had to provide an approved "chute rinse off area" at the jobsite.  *Id.*  Important for this analysis is the provision that states, "[SRMI]'s responsibility for quality is based upon proper testing and handling of specimens according to A.S.T.M. standards and specifications."[2]  *Id.*

The parties agree that the concrete was required to be tested according to Standard Specification 802. Standard Specification 802 required that the concrete have a minimum compressive strength of 3,500 psi at 28 days.  The compressive strength was to be determined by random cylinder tests to be performed at the point of delivery.  (*Id.* at 8–20).

The parties also agree that the concrete was to be tested under the requirements of the Special Construction Provision.  The Special Construction Provision was also applicable to the testing of SRMI's Class S concrete materials because the materials were to be used in a drilled shaft.  The provisions of the Special Construction Provision that address requirements for concrete materials provides as follows:

> Materials. (a) Concrete.  All concrete shall be Class S with a minimum 28-day compressive strength of 3500 psi and shall conform to Section 802 unless modified herein.  The slump

---

[1] The Arkansas State Highway and Transportation Department is now called the Arkansas Department of Transportation.

[2] A.S.T.M. is the American Society for Testing and Materials.  While the Contract states that the concrete would comply with A.S.T.M. standards and specifications, Hix Smith testified that since this project was for the AHTD, the concrete would comply with the American Association of State Highway and Transportation Officials ("AASHTO"). (Smith Dep. 52:16–21, ECF No. 45 at 27).

> of the drilled shaft concrete, at time of placement, shall be 7 inches ± 1 inch for concrete placed in the dry or 8 inches ± 1 inch for concrete placed underwater. The maximum water cement ratio specified in subsection 802.05 shall not be increased. The maximum aggregate size shall not be greater than 1 inch. An approved admixture may be used to obtain desired workability. . . (g) Concrete. The work shall be performed in accordance with the provisions of Section 802 and in conformance with the requirements herein. The maximum sublot size for acceptance sampling and testing of drilled shaft concrete by the Contractor shall be 100 cubic yards or one drilled shaft.

(ECF No. 40 at 22).

On September 8, 2016, SRMI provided the concrete for the right drilled shaft of bent three (the "Shaft"). (Smith Dep. 10:2–5, ECF No. 45 at 19). On-site testing performed at the time the concrete for the Shaft was placed on September 8, 2016 initially showed that SRMI had correctly mixed the concrete and that the concrete met the requisite "slump" value. (Tackett Dep. 97:4–21, ECF No. 45 at 79). There were three rounds of coring to test the concrete provided under the contract. The parties agree that the results from rounds one and two showed that the concrete did not meet the requirements under the contract, but there were issues with the samples that cast doubt on the reliability of those results. The AHTD gave Robertson the option to perform additional core testing. (ECF No. 45 at 102). Robertson decided to conduct the third round of coring and submitted a coring plan, which the AHTD approved via a letter dated March 8, 2017. (*Id.* at 103)

The third round of coring was performed in March 2017. (*Id.* at 105). The AHTD performed its analysis on the core samples recovered during the third round of coring and delivered the results to Robertson via an April 3, 2017 letter. (*Id.* at 105–08). According to that test, there were areas within the upper 28.5 feet of the Shaft that failed to meet the requisite compressive strength of at least 3,500 psi. *Id.* Thus, the AHTD ordered Robertson to remove and replace the upper 28.5 feet of the Shaft. *Id.* Robertson appealed the AHTD's decision via an April 17, 2017 letter, but the AHTD affirmed its decision. (*Id.* at 109–12).

## II.     Standard of Review

The standard for summary judgment is well established. A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a). When a party moves for summary

4

judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

When deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

**III.   Discussion**

As the Court understands the arguments made by both parties, the main question is whether the contract allowed for destructive core drilling to test the compressive strength of the shaft. The Special Provision mentions further evaluation by core drilling:

> (h) Evaluation by Core Drilling. A drilled shaft that is found to be unacceptable by the CSL tests may be cored by the Contractor using double tube core barrels. A core sample shall be taken from each defect location, at a length specified by the Engineer. Core samples shall be a minimum of 2.5 inches in diameter. The core samples shall be large enough to be retrieved and tested. The methods and equipment used to core the drilled shaft and grout the cored hole shall be approved by the Engineer prior to commencing coring operations. An accurate log of the core shall be kept and the core shall be crated and properly marked showing the shaft depth at each interval of core recovery. The core, along with five copies of the coring log, shall be provided to the Engineer. If the quality of the shaft, as represented by the core samples, is determined to be acceptable by the Engineer, then the shaft and the shaft site will be turned back to the Contractor and further construction may proceed. If the quality of the shaft is determined to be unacceptable by the Engineer, then

> the Contractor shall proceed in accordance with Subsection (g), "Defective Shaft," in this Special Provision.

(ECF No. 45 at 69–70).

The parties do not dispute that this contract is to be interpreted under Arkansas law. Under Arkansas law, when a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Tri–Eagle Enterprises v. Regions Bank*, 2010 Ark. App. 64, 373 S.W.3d 399. When a contract expresses the parties' intent in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language in the contract. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Nash v. Landmark Storage, LLC*, 102 Ark. App. 182, 283 S.W.3d 605 (2008). The standard of review for contract interpretation has been stated often:

> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006) (internal citations omitted).

In addition, the doctrine of *contra proferentum*, "require[s] that if uncertainty or ambiguity exists within the terms of a contract, or if it is susceptible to more than one reasonable construction, then the courts must construe the contract most strongly against the party who drafted it." *Price v. Willbanks*, 2009 Ark. App. 849, 374 S.W.3d. 28.

Here, the contract between the parties is ambiguous as to whether the AHTD could test the compressive strength of the shaft by using destructive core drilling. SRMI argues that the contract only allowed the AHTD to pursue this form of testing to determine the extent of anomalies and defects based on the language in the special provision. (*See* ECF 40 at 3–4). Hix Smith prepared the formal offer to Robertson on behalf of SRMI and was aware of the now disputed provisions at the time the parties entered their contract. (Smith Dep. 19:13 – 20:1, ECF No. 45 at 22–23). Smith testified that the concrete could be

subjected to being cored, but he believed that it could only be cored to find anomalies, not to test the strength of the concrete. (Smith Dep. 151:7–12, ECF No. 45 at 36). Upon review of the provisions, there is not enough evidence to determine that the AHTD could not use destructive core drilling to determine the compressive strength of the concrete. The parties' contract could be construed in a way that grants the AHTD broad discretion to test the materials provided by SRMI. Therefore, this issue will be left to a jury to resolve.

IV.     Order

For the reasons stated above, the Court finds that Plaintiff's Motion for Partial Summary Judgment (ECF No. 40) should be and hereby is **DENIED**.

**IT IS SO ORDERED** this 16th day of November 2021.

/s/ Robert T. Dawson

**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**